**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MAXIM HEALTHCARE STAFFING SERVICES, INC., | § § | |
| *Plaintiff,* | § § | SA-21-CV-01100-XR |
| v. | § § | |
| THOMAS MATA, NUWEST GROUP HOLDINGS, LLC, | § § § | |
| *Defendants.* | § § | |

## <u>ORDER</u>

On this date, the Court considered Plaintiff's Supplemental Motion for Preliminary Injunction (ECF No. 29) and the parties' oral argument on the requested preliminary injunction (ECF No. 31). For the reasons discussed at the preliminary injunction hearing and set out more fully below, the Court **GRANTS** the motion.

## BACKGROUND

Plaintiff Maxim Healthcare Staffing Services, Inc. ("Maxim") recruits and provides medical personnel to hospitals, nursing homes, government agencies, and other medical and healthcare facilities. ECF No. 1 ¶ 15. In 2014, Maxim secured a four-year contract with the U.S. Immigration and Customs Enforcement ("ICE") Health Care Service Corps ("IHSC") to provide staffing services. *Id.* ¶ 20. In January 2017, Maxim hired Defendant Thomas Mata ("Mata") as a Senior Program Manager in its Strategic Solutions division. *Id.* ¶ 18. During his onboarding, Mata signed an "Employment and Mutual Arbitration Agreement," agreeing not to divulge any trade secrets. *See* ECF No. 4-2. Mata served as the lead project manager on the four-year ICE/IHSC contract. ECF No. 1 ¶ 20. Maxim alleges that Mata, as the lead project manager, "received and

1

developed confidential and trade secret information related to Maxim servicing the contract; received and developed confidential and trade secret information related to Maxim's business development strategy for procuring additional contracts from ICE/IHSC; and maintained relationships with key points-of-contact within ICE/IHSC." *Id.*

During the summer of 2021, Mata unsuccessfully applied for a promotion within Maxim. *Id.* ¶ 30. Maxim claims that Mata was contemporaneously applying for employment with Maxim's competitors, including Defendant NuWest Group Holdings, LLC ("NuWest"). *Id.* NuWest, like Maxim, provides staffing services to government agencies. *Id.*

On July 28, 2021, ICE/IHSC hosted a virtual Industry Day, in which it provided details about an upcoming contract for healthcare staffing services. ECF No. 9 ¶ 25. Mata and others attended Industry Day on behalf of Maxim. *Id.* ¶ 26. Representatives from NuWest also attended Industry Day. *Id.* ¶ 25. Shortly after Industry Day, NuWest hired Joseph Shurina ("Shurina") as its Director of Government Services. *Id.* ¶ 27.

On September 9, 2021, NuWest "made an offer of employment to Mata, for a job reporting to Shurina."[1] ECF No. 9 ¶ 28. Mata accepted NuWest's offer that same day, but continued to work at Maxim until September 23, 2021. *Id.* ¶ 30. NuWest's offer letter cautioned Mata to "not bring with him any originals or copies of papers, documents, notes or other materials, whether stored electronically or otherwise, which belong to any former employer or which contain any trade secrets or confidential information of any former employer." ECF No. 9-3, at 55.

From the date he accepted NuWest's offer to his last day at Maxim, Mata sent several emails to Shurina and other NuWest employees. *See* ECF No. 18-1 ¶¶ 17–19. As is relevant here, on September 15, 2021, Mata sent to Shurina portions of a proposal that Maxim had submitted to

---

[1] In his affidavit, Mata claims that NuWest extended an informal offer of employment during a telephone conversation with Shurina on September 2, 2021. *See* ECF No. 18-1 ¶ 16.

successfully procure a contract with ICE for personal assistance services. *See* ECF No. 29, at 4. Mata began working for NuWest on September 21, 2021, before his official separation from Maxim.[2] ECF No. 9 ¶ 30. On October 5, 2021, ICE/IHSC released its anticipated solicitation for a healthcare staffing services contract. ECF No. 9 ¶ 34. Phase I bidding was set to close on October 27, 2021, and Phase II bidding was expected to close in January 2022.[3] *Id.*

On October 12, 2021, NuWest received a cease-and-desist letter from Maxim. ECF No. 9 ¶ 35; *see also* ECF No. 18-1 ¶ 27. The letter informed NuWest "that Mata was subject to a non-compete agreement" and that "Mata 'stole confidential and trade secret information related to Maxim's procurement efforts.'" ECF No. 9 ¶ 35. A week later, Maxim filed suit against NuWest and Mata in Kendall County District Court for trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"); breach of contract; and tortious interference with contract. ECF No. 1 ¶ 8. Maxim asked the state court to issue a temporary restraining order and temporary injunction. *Id.* Maxim also sought expedited discovery. *Id.* ¶ 10.

On October 20, 2021, NuWest notified Mata that it would be terminating his employment. *See* ECF No. 9 ¶ 2; ECF No. 18-1 ¶ 28.

On October 26, 2021, the state court granted Maxim's request for a temporary restraining order against NuWest and Mata, but took Maxim's request for expedited discovery under advisory. ECF No. 1 ¶¶ 9–10. The state court instructed Maxim to submit proposed written discovery requests by October 29, 2021, and Maxim complied. *Id.* ¶¶ 10–11. Although the state court informed the parties that it would issue a ruling on Maxim's request for expedited discovery by November 1, 2021, *id.* ¶ 10, no such ruling followed by the indicated date, *id.* ¶ 12. "Given the

---

[2] Mata claims that Shurina was aware that he was working for both companies at the same time, but that no one from Maxim knew that he was working for NuWest while still employed by Maxim. *See* ECF No. 18-1 ¶ 20.

[3] ICE/IHSC subsequently extended the Phase I bidding deadline to October 29, 2021. *See* ECF No. 9 ¶ 34.

busy docket in Kendall County, the uncertainty surrounding when Maxim would receive a ruling on its motion for expedited discovery, and the exigent circumstances present in this case," Maxim opted to seek relief in federal court. *Id.* ¶ 13.

On November 8, 2021, Maxim filed suit in this Court alleging, in relevant part, that NuWest and Mata had misappropriated its trade secrets under TUTSA.[4] *Id.* ¶¶ 37–54. As in its state court petition, Maxim asked this Court to immediately restrain NuWest and Mata from divulging or using its trade secrets.[5] *Id.* ¶ 78. Concurrently with its complaint, Maxim filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking "to protect the legitimate interests that it maintains in its confidential and trade secret information and business relations." ECF No. 4, at 17. The Court held a hearing on Maxim's motion for a temporary restraining order on November 22, 2021. ECF No. 20. That same day, Maxim filed a supplement to its motion. ECF No. 18. The supplement included an affidavit from Mata, ECF No. 18-1, and a letter stating that Maxim was no longer seeking relief against Mata, ECF No. 18.[6]

The Court granted in part Maxim's motion for a temporary restraining order. ECF No. 21. Specifically, the Court restricted NuWest, for fourteen days, from "[d]irectly or indirectly using or divulging or threatening to use or divulge, for any reason, Plaintiff's trade secrets and confidential information obtained from Defendant Mata or acquired by Defendant Mata from Plaintiff." *Id.* at 4. On November 29, 2021, pursuant to the parties' joint request, the Court extended the temporary restraining order to December 15, 2021. ECF No. 23.

---

[4] Maxim also asserts Defend Trade Secrets Act claims against NuWest and Mata; breach of contract claims against Mata; and a tortious interference with contract claim against NuWest. *See* ECF No. 1 ¶¶ 37–45, 55–77.

[5] On November 8, 2021, NuWest filed a separate action against Maxim for declaratory judgment, asking the Court to find that NuWest did not acquire or otherwise misappropriate Maxim's trade secrets. *See NuWest Grp. Holdings, LLC v. Maxim Healthcare Staffing Servs., Inc.*, No. 5:21-CV-1097-OLG, ECF No. 1 (W.D. Tex. Nov. 8, 2021). NuWest voluntarily dismissed the case without prejudice on November 10, 2021. *See id.*, ECF No. 5.

[6] To date, Maxim has not formally dismissed its claims against Mata.

4

On December 14, 2021, Maxim filed a Supplemental Motion for Preliminary Injunction. ECF No. 29. In its supplemental motion, Maxim "requests a limited preliminary injunction enjoining NuWest from directly or indirectly using or divulging, or threatening to use or divulge, for any reason, Maxim's trade secrets and confidential information obtained from Mata or acquired by Mata from Maxim." *Id.* at 8. On December 15, 2021, the Court held a hearing on Maxim's request for a preliminary injunction. ECF No. 30.

## DISCUSSION

### I. Legal Standard

A preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by substantive law. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

TUTSA provides that "[a]ctual or threatened misappropriation may be enjoined if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment."[7] TEX. CIV. PRAC. & REM. CODE § 134A.003. "To prevail on a trade

---

[7] "TUTSA and DTSA are both based on the Uniform Trade Secrets Act ('UTSA') promulgated by the National Conference of Commissioners on Uniform Laws in 1985 and adopted by 47 states." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 332–33 (E.D. Tex. 2019). "Therefore, a substantial number of provisions . . . are identical or very similar in many respects." *Id.* at 333; *see also Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 702–03 (W.D. Tex. 2019) (noting substantial similarities between TUTSA and DTSA); *M-I L.L.C. v. Q'Max Sols., Inc.*, No. CV H-18-1099, 2019 WL 3565104, at *3 (S.D. Tex. Aug. 6, 2019) (analyzing claims under TUTSA and DTSA together). For clarity, the Court only considers Maxim's TUTSA claim against NuWest, as it is dispositive of the relief Maxim requests.

secret misappropriation claim under TUTSA, the plaintiff must prove: (1) the information at issue is a trade secret; (2) the defendant acquired the trade secret through improper means; and (3) the defendant's improper use of the trade secret harmed the plaintiff." *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, No. CV H-19-2953, 2020 WL 6748049, at *12 (S.D. Tex. Nov. 17, 2020) (citing *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 340 (E.D. Tex. 2019); *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 702 (W.D. Tex. 2019)).

## II.   Analysis

### A.   Maxim has clearly shown a substantial likelihood of success on the merits.

#### 1.   Certain information in the proposal at issue is entitled to trade secret protection.

TUTSA defines a "trade secret" as:

> all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]

TEX. CIV. PRAC. & REM. CODE § 134A.002(6). To constitute a trade secret, the owner of the trade secret must have "taken reasonable measures under the circumstances to keep the information secret[.]" *Id.* § 134A.002(6)(A). The alleged trade secret must also derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 134A.002(6)(B). In the context of a preliminary injunction, "the trial court does not decide whether the information sought to be protected is a trade secret." *First Command Fin. Plan., Inc. v. Velez*, No. 4:16-CV-01008-O, 2017 WL 2999405, at *6 (N.D. Tex.

6

May 8, 2017). "Rather, it determines whether the applicant has established the information is entitled to trade secret protection until a trial on the merits." *Id.*

Maxim asserts that NuWest obtained through Mata a confidential contract proposal that Maxim had used to secure a personal assistance services contract with ICE and on which it will rely in the future to secure additional contracts with ICE/IHSC and other government organizations.[8] ECF No. 29, at 4. Paul Davis, Maxim's National Director for Government Services, testified that the proposal is located on Maxim's internal system and "is not accessible to anyone outside of the core group of individuals responsible for the development and the operation of any awarded contract." ECF No. 31, at 23:21–25. The core group of individuals, Davis testified, consisted of seven to eight individuals, including Mata. *Id.* at 24:8–13. Davis further testified that a password and individual ID are required to access the proposal. *Id.* at 23:23–25.

Davis also testified that the information in the proposal is unique to Maxim and how it performs it staffing services. *Id.* at 18:16–22:18. According to Davis, the proposal is a "successful blueprint" that outlines how Maxim conducts its business as an organization; it is based on Maxim's documentation of its own past performance, which informs how Maxim presents its information in proposals for government contracts. *See id.* at 17:7–13. Moreover, Davis testified, the proposal "could be used to pursue other government contracts very, very easily, with manipulation, to various government agencies." *Id.* at 17:25–18:2.

---

[8] Maxim represented at the preliminary hearing that the proposal is the only actual document at issue. *See* ECF No. 31, at 9:4–7. Maxim claims that the information NuWest obtained through Shurina's questioning of Mata, concerning Maxim's recruiting systems and processes for servicing large government contracts, is also entitled to trade secret protection because, in the staffing industry, those systems and processes represent a company's "secret sauce." *See* ECF No. 29, at 4; ECF No. 31, at 7:2–10. Because the Court finds that certain information in the proposal at issue is entitled to trade secret protection until a trial on the merits, the Court need not address whether the information relayed between Mata and Shurina during their conversations about the proposal is similarly entitled to trade secret protection until a trial on the merits.

Shurina similarly acknowledged that proposals staffing companies like NuWest and Maxim submit for government contracts contain proprietary information. *See* ECF No. 31, at 116:21–117:7. Shurina specifically testified that "NuWest's IHSC proposal contained information about its approach and strategy that NuWest would not want its competitors to see." *Id.* at 117:11–14. Both Maxim and NuWest, Shurina explained, include in their respective proposals proprietary strategies that are unique to each company and gleaned from years of experience in the industry. *See id.* at 117:11–23.

Based on the evidence presented and having independently reviewed the proposal at issue, the Court finds that certain information in the proposal is unique to Maxim.[9] The evidence also sufficiently establishes that Maxim took reasonable measures under the circumstances to keep the information in the proposal a secret. It is undisputed that the proposal is located on Maxim's system and requires a password and individual ID to access. Further, only a core group of seven to eight Maxim employees, including Mata, had access to the proposal.

The evidence also sufficiently establishes, at this juncture, that the proposal and certain information contained therein derive independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. There is no dispute that Maxim used the proposal to successfully secure a contract with ICE for personal assistance services. In addition, it is conceivable that the proposal could be used to procure contracts with other government entities, including, for example, a contract with ICE/IHSC for healthcare staffing services. Moreover, both parties agree that information in proposals submitted to government entities is proprietary.

---

[9] In light of the Court's finding that certain information in the proposal at issue is entitled to trade secret protection until a trial on the merits, the Court neither cites to those parts of Davis's and Shurina's testimony that specifically describe the content of the proposal nor provides a detailed account of the information in the proposal based on its independent review.

Therefore, the Court finds that certain information in the proposal at issue is entitled to trade secret protection until a trial on the merits.

### 2. NuWest had reason to know that it acquired information that is entitled to trade secret protection through improper means.

TUTSA proscribes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" TEX. CIV. PRAC. & REM. CODE § 134A.002(3). Under the statute, improper means include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." *Id.* § 134A.002(2).

Here, the evidence shows that, upon being hired at Maxim, Mata signed an "Employment and Mutual Arbitration Agreement." ECF No. 4-2. In signing the document, Mata agreed to "not divulge any Confidential Information or Trade Secrets concerning MAXIM or any MAXIM clients, customers, employees, or Healthcare Employees . . . to any other person, entity or company besides MAXIM." *Id.* at 2. "The existence of an agreement that either imposes confidential duties on the parties or provides one party with the opportunity to learn about the other party's trade secret firsthand can establish that a confidential relationship existed between the parties." *Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, No. 4:15-CV-02109, 2016 WL 1702674, at *7 (S.D. Tex. Apr. 27, 2016) (citing *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 565 (S.D. Tex. 2011), *aff'd sub nom Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013)).

Nevertheless, on September 15, 2021, Mata, while working at Maxim, emailed portions of the proposal at issue to Shurina. *See* ECF No. 29, at 4; *see also* ECF No. 31, at 79:8–80:14. Mata testified that, prior to and after sending the proposal, he and Shurina spoke about the proposal in connection with NuWest's bid for the ICE/IHSC contract—the same government contract for

which Maxim also submitted a proposal. *See* ECF No. 31, at 80:22–81:5. Mata further testified that, pursuant to Shurina's direction, he incorporated portions of the proposal he had emailed to Shurina into a draft of NuWest's proposal for the ICE/IHSC contract. *See id.* at 87:7–19.

NuWest claims that Mata never disclosed "the existence of any restrictive covenant agreements between himself and Maxim." ECF No. 9, at 7. "In fact," NuWest submits, "Mata was expressly cautioned, on receipt of his offer letter, that he must 'not bring with him any originals or copies of papers, documents, notes or other materials, whether stored electronically or otherwise, which belong to any former employer or which contain any trade secrets or confidential information of any former employer.'" *Id.* at 7–8 (quoting ECF No. 9-3, at 55). The fact that NuWest cautioned Mata not to bring any documents that contain trade secrets, however, underscores NuWest's understanding that trade secrets may exist in the staffing industry. Such an understanding indicates that NuWest knew the nature of conducting business in an industry that demands scrupulous attention to the potential disclosure of trade secrets. Moreover, Shurina himself has acknowledged that certain information in the proposals NuWest and Maxim submit to government entities for staffing services is proprietary. On balance, the evidence sufficiently shows that NuWest, through its agent Shurina, had reason to know that Mata had acquired and sent to Shurina the proposal at issue in breach of his duty to Maxim to maintain secrecy.

Thus, the Court finds that NuWest had reason to know that it acquired information that is entitled to trade secret protection through improper means.

### 3. NuWest is in possession of and in a position to use information that is entitled to trade secret protection.

In the context of a preliminary injunction, "the weight of case law supports the entry of an injunction upon a showing that a defendant probably, rather than actually, disclosed trade secrets." *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *3

(W.D. Tex. Jan. 30, 2019) (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015)).

After all, TUTSA affords injunctive relief to prevent "threatened misappropriation." TEX. CIV.

PRAC. & REM. CODE § 134A.003; *see also Hughes v. Age Indus., Ltd.*, No. 04-16-00693-CV, 2017

WL 943423, at *5 (Tex. App.—San Antonio 2017, no pet.) ("[T]he very purpose of an injunction

is to prevent disclosure of trade secrets pending trial[.]"). Thus, a showing that a defendant

probably, rather than actually, disclosed trade secrets "can be made by proving that a defendant is

'in possession of the information and is in a position to use it.'"[10] *TFC*, 2019 WL 369152, at *3

(quoting *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.—Fort Worth 2003,

no pet.)); *see also First Command*, 2017 WL 2999405, at *6 ("His retention of this information . .

. still satisfies the definition of misappropriation.").

In this case, it is undisputed that NuWest remains in possession of portions of the proposal

at issue. Indeed, Shurina testified that NuWest has "preserved," but not returned, Maxim's

documents. ECF No. 31, at 122:13–15. Shurina also testified that NuWest intends to continue

bidding on the ICE/IHSC contract for healthcare staffing services, with an anticipated Phase II

deadline set for January 2022. *Id.* at 122:4–5. Shurina further testified that NuWest also intends to

bid on other government contracts in the future. *See id.* at 122:6–12. This evidence establishes that

NuWest is in a position to use information that is entitled to trade secret protection.

In sum, Maxim has shown that NuWest acquired through improper means certain

information in the proposal at issue that is entitled to trade secret protection until a trial on the

---

[10] There is some debate on whether a trade secret misappropriation claim under TUTSA requires a showing of improper use. *See StoneCoat*, 426 F. Supp. at 340. At least one court has determined that a trade secret misappropriation claim under TUTSA "may be based on either a 'use' theory or an 'acquisition of improper means' theory, and alternative theories may be submitted to the jury if supported by the pleadings and evidence." *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 3637801, at *12 (E.D. Tex. July 6, 2020).

merits. Maxim has also shown that NuWest is in possession of and in a position to use that information. Maxim, therefore, has clearly shown a substantial likelihood of success on the merits.

**B. The remaining elements for a preliminary injunction are satisfied.**

The remaining elements for a preliminary injunction are also satisfied. Because Maxim and NuWest are direct competitors bidding for the same ICE/IHSC contract, the Court finds that Maxim would be irreparably harmed if an injunction were not granted. The Court also finds that the threatened injury to Maxim outweighs the harm an injunction may cause NuWest. NuWest conceded as much, stating at the preliminary injunction hearing that no harm will result if the Court grants an injunction. *See* ECF No. 31, at 123:10–24. And finally, the Court finds that issuing an injunction will help ensure a fair bidding process on the ICE/IHSC contract and will therefore not undermine the public interest. As a result, a preliminary injunction is warranted in this case.

**CONCLUSION**

Accordingly, Plaintiff's Supplemental Motion for Preliminary Injunction (ECF No. 29) is hereby **GRANTED**.

Defendant NuWest is hereby **ORDERED** to return to Plaintiff any and all Maxim documents that it received from Defendant Mata and to ensure that no such documents remain on its internal systems.

Defendant NuWest is **PROHIBITED** from directly or indirectly using or divulging or threatening to use or divulge, for any reason, Plaintiff's trade secrets and confidential information obtained from Defendant Mata or acquired by Defendant Mata from Plaintiff. This includes, but is not limited to, use or threatened use of Plaintiff's trade secrets and confidential information obtained from Defendant Mata or acquired by Defendant Mata from Plaintiff in the submission of

bidding materials on the currently open ICE/IHSC contract for healthcare staffing services and any and all forthcoming bidding materials for future government contracts.

It is so **ORDERED**.

**SIGNED** this January 11, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE